Clarence GOODRUM, No. 169484,
Petitioner,

v.

Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.

Civ. A. No. 68–H–148.

United States District Court
S. D. Texas,
Houston Division.

Feb. 25, 1969.

Tipton & Bishop (William D. Tipton) Houston, Tex., for petitioner.

Crawford C. Martin, Atty. Gen., (Dunklin Sullivan) Asst. Atty. Gen., Austin, Tex., for respondent.

## MEMORANDUM AND ORDER:

HANNAY, District Judge.

Petitioner is presently serving a State of Texas life sentence for his conviction of robbery by assault with a prior similar non-capital felony conviction for enhancement of punishment. Article 62, Vernon's Ann.Texas Penal Code. The conviction resulted from a trial by jury on a plea of not guilty in the district court of Harris County, Texas. The conviction was affirmed by the Texas Court of Criminal Appeals in Goodrum v. State, 358 S.W.2d 120. Petitioner seeks federal habeas corpus relief, Title 28, U.S.C.A., Section 2241 et seq., on the following grounds:

1. Alleged ineffective assistance of counsel.

2. Alleged improper use of a prior conviction for enhancement of punishment.

3. Alleged absence in the record of a written waiver of a jury trial in the prior felony conviction used for enhancement.

4. Alleged defectiveness in the indictment.

5. Alleged insufficiency of evidence at the trial to sustain the conviction.

There is no dispute now that Petitioner has exhausted his available state remedies as required by law. Article 11.07, as amended, Vernon's Ann. Texas Code of Criminal Procedure; Title 28, U.S.C. A., Section 2254; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. Petitioner has had a full habeas evidentiary hearing before this Court. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.

2d 770. Petitioner had the benefit of counsel at the evidentiary hearing and has additional counsel on his brief now before the Court. A Transcript of the testimony at the habeas evidentiary hearing is now before the Court as are the Statement of Facts and record of the trial. These documents have been carefully reviewed and fully considered.

## I.

■ The record discloses that Petitioner, because of his indigency, was appointed defense counsel by the trial court. Mr. Howard Lake, who was experienced in criminal law, and of mature age, see and compare: Von Moltke v. Gillies, 332 U.S. 708, 725–726, 68 S.Ct. 316, 92 L.Ed. 309, was appointed by the trial court on October 13, 1961 and represented Petitioner at the trial and on appeal. *The trial took place on November 20, 1961.* (Emphasis added throughout) Lake testified that he visited with Petitioner and discussed the case with him several times during this period.

Lake's testimony would further show that he early detected that Petitioner was in fact in jail on the date specified in the indictment. The prosecution was prompted to stipulate to this fact. The discrepancy was in fact a period of two days; and it is apparent that the validity of the indictment in this respect was sustainable by the "on or about" clause therein pertaining to the date of the alleged offense.

Lake testified that at the time of this trial criminal cases amounted to 75% of his practice. Included in his experience by that time were both capital and enhancement of punishment cases.

Petitioner was not called to testify at the state trial. Under the facts and circumstances of this case this was a professional exercise of trial strategy. Its propriety is apparent from the record and cannot be fairly questioned at this time. The same must be said about Lake's decision not to request a continuance. One of Petitioner's contentions

here is that there was an available alibi witness about whom Lake had been told. Lake disclaims any such knowledge at the time of trial. Lake's testimony at the evidentiary hearing was consistent and credible and is neither refuted nor effectively impeached. It is, in short, consonant with the clear indication by the record that there was conscientious legal representation by Lake.

The alibi witness in question was Petitioner's wife (and perhaps others) who allegedly could and would have testified that Petitioner was at home on the night of August 26, 1961. This was the specific date which the prosecution stipulated was the date of the alleged offense rather than August 2δ, 1961. By his own testimony, Petitioner mentioned this one time to Lake. This was in the courtroom during the trial itself.

Petitioner's wife testified at the evidentiary hearing concerning her availability as an alibi witness. Prior to the trial she had discussed with her husband whether or not she should come to the trial. As to the reason for not coming, she testified:

> "Well, I was working and I had to work that day and on account of the day on the indictment and he knew he was in jail, he knew it wouldn't be necessary for me to be there."

The operative facts of the case were stated by the Court of Criminal Appeals as follows (358 S.W.2d, at 121):

> " * * * John Kilgore, 16 years of age, testified that on the date in question he was working alone in the L. & J. Grocery; that appellant and another individual entered the store and asked for change for a dollar bill in order to make a telephone call; that they made the call from a pay phone in the store and departed; that appellant soon returned alone and asked to see the watches that were in a glass case on the counter; that while he was producing the watches appellant announced that it was a holdup and demanded all the money in the cash register; that appellant kept one hand thrust in his pocket; that he was in

fear at the time he gave appellant some $70.00 from the cash register; that appellant forced him to lie down on the floor, face down; and that appellant stepped over him to get the watches and other merchandise.

"He further testified that after appellant left the store he called the owner of the store and the sheriff's department and that he later identified appellant in a police lineup.

"Officers from the sheriff's department testified that after obtaining descriptions from Kilgore they arrested three individuals in an automobile shortly after the holdup, that one of the three was identified as appellant's companion by Kilgore, and that merchandise stolen from the store was found in his possession. The officers further testified that after conversing with the three individuals under arrest and, acting upon information given by them, they went to appellant's house and found him standing in a closet of a rear bedroom behind the clothes."

Kilgore testified that he next saw Goodrum the next day at the police lineup around 12:00 noon. According to his testimony, four people were in the lineup. He immediately identified Goodrum. According to this testimony, Goodrum was dressed the same as at the time of the robbery except that he did not have a hat on. Kilgore testified he again saw Goodrum at the preliminary hearing and positively identified him there.

The cross-examination by Lake of Kilgore was thorough and searching and pointed towards the ultimate issue of proper identity. It must be observed that Kilgore's testimony held up under this vigorous cross examination.

The record in fact reveals that Goodrum was arrested on the day following the alleged offense. He was in his place of residence at the time of the arrest. This came after police interrogation of one R. E. Smith. Smith was the party whom Kilgore identified as being the companion of Goodrum and who had been apprehended with others shortly after the episode.

It is unclear if there was an arrest warrant for Goodrum. An arrest warrant is not in evidence; nor is this an issue before this Court on the basis of any proof brought forth by Petitioner at the evidentiary hearing.

Goodrum contends that it was necessary for him to write to the state trial judge in order to get Lake to come to see him at the jail. (The trial judge was not made a witness at the evidentiary hearing). He further contends that Lake had negotiated with the prosecution for a nine year sentence in return for a guilty plea which he, Goodrum, refused in protest of his innocence. Lake denies that he demanded that Goodrum enter a plea of guilty on this basis.

Lake opened the defense of Goodrum with a Motion to strike the enhancement count in the indictment. The contention was that the alleged prior offense, burglary with intent to commit theft and to which a guilty plea was made by Goodrum, was not similar within the contemplation of the enhancement statute in that it did not contain the element of corporal conversion.

In developing the issue of identity at the trial, Lake seized upon testimony by Kilgore that Goodrum had his left hand in his pocket at the time he allegedly committed the robbery. (No gun was seen; the assault lay in the wrongdoer's threatening declaration that it was a holdup etc). Lake brought on Goodrum's brother to testify that Goodrum was right handed.

The test for ineffective assistance of counsel, in the constitutional sense, has traditionally been an exacting one. It has required a showing that an attorney's performance was a sham, a mockery, a farce, and a thing shocking to the conscience of the Court. United States v. Wight, 2 Cir., 176 F.2d 376, 379, cert. denied 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586; Mitchell v. United

States, 104 U.S.App.D.C. 57, 259 F.2d 787, cert. denied 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86; Scott v. United States, 6 Cir., 334 F.2d 72, cert. denied 379 U.S. 842, 84 S.Ct. 81, 13 L.Ed.2d 48. See also: Odom v. United States, 5 Cir., 377 F.2d 853, 858–859. The Court of Appeals for the Fifth Circuit has expounded and endorsed the proposition that this guarantee of due process means "* * * not errorless counsel, not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance. * * *" McKenna v. Ellis, 5 Cir., 280 F.2d 592, 599; Pineda v. Bailey, 5 Cir., 340 F.2d 162, 164. The record of this case and the testimony of Lake reveal a more than reasonably vigorous professional effort by him in defense of Petitioner. There is nothing to impeach his good faith. There is no suggestion of any compromising relationship with the prosecution. The fact issue of proper identity was, indeed, cleverly developed at the trial. In light of the Petition now before this Court, wherein Petitioner has had ample representation by counsel, the main issues appear reasonably to have been raised by Lake at one time or another during his representation. A possible exception to this is the issue of alibi for Saturday, August 26, 1961. The absence of Petitioner's wife from the trial, by her own testimony, was to some extent her own decision and Petitioner's.

Petitioner's counsel cites Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921. The issue there was whether state action unconstitutionally deprived an accused of the opportunity to secure witnesses. The issue here is not forbidden state action but alleged inaction by defense counsel.

The Court is referred to no case authority and can find none where a defense counsel's decision not to call an alleged alibi witness, standing alone, constitutes ineffective assistance of counsel.

■ Where the defense as a whole suggests that the particular decision on witnesses is within the realm of trial strategy, as is the case here, a wide latitude of permissiveness is granted to counsel. Cowens v. Wainwright, 5 Cir., 373 F.2d 34; Pope v. United States, W. D. of Texas, 287 F.Supp. 214, 218. See also: Odom v. United States, 5 Cir., 377 F.2d 853, 858–859. Petitioner's cited case of United States ex rel. De Mary v. Pate, N.D. of Illinois, 277 F.Supp. 48, where "* * * prejudicial error resulted at trial from a *total* lack of any reasonable conscientious effort directed towards the preparation of a defense * * *", 277 F.Supp. at 53, is distinguishable from instant case and does not control here.

Lake's performance as defense counsel was well within the standards of competency announced in Williams v. Beto, 5 Cir., 354 F.2d 698.

## II.

■ It is well settled in Texas that robbery and *burglary with intent to commit theft* are offenses of the same nature within the contemplation of Article 62, Texas Penal Code. Robertson v. Texas, Tex.Cr.App., 418 S.W.2d 678; Schmeideberg v. Texas, Tex.Cr.App., 415 S.W.2d 425; Ex parte Ranels, 155 Tex. Cr.R. 560, 237 S.W.2d 317; Farris v. Texas, 155 Tex.Cr.R. 261, 233 S.W.2d 856; Davis v. Texas, 157 Tex.Cr.R. 176, 247 S.W.2d 561; Flores v. Texas, 145 Tex.Cr.R. 134, 166 S.W.2d 706. This established rule of state law cannot be said to violate federal-standard due process.

The recent United States Supreme Court authority of Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (January, 1967), directly sustained the federal constitutionality of the Texas enhancement of punishment statutes as they then existed (Articles 61, 62 and 63, Texas Penal Code) and as they existed at times material here. This sanction explicitly embraced Article 62 as it was applied in this case.

## III.

The record reveals that the prior similar conviction used for enhancement was

reached by Petitioner's plea of guilty entered *with the advice of defense counsel.*

■ A valid plea of guilty entered with advice of competent counsel is conclusive of the issue of guilt and effectively waives all nonjurisdictional defects in the proceedings from which it resulted. Busby v. Holman, 5 Cir., 356 F.2d 75.

■ Petitioner's complaint that the record in the prior similar conviction does not contain a written consent of waiver of trial by jury as then provided by Article 10a, Texas Code of Criminal Procedure, is not within the prohibitory feature of the foregoing rule. In light of the presumptively valid plea of guilty the alleged defect is a formality only. It does not infect the "integrity of the fact-finding process," see: Linkletter v. Walker, 381 U.S. 618, 639, 85 S.Ct. 1731, 1743, 14 L.Ed.2d 601, or fatally prejudice the issue of guilt or innocence. See and compare: Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319.

## IV.

■ Petitioner alleges that the indictment in instant case is defective because it did not allege that the prior similar conviction was for " * * * a felony less than capital * * * ", as required by Article 62. The indictment alleged, inter alia, that the prior similar conviction was for "burglary, a felony".

The record amply demonstrates that the prior similar conviction was for a felony less than capital. *This is implicit in the full reading of the enhancement feature of the indictment and the indictment itself.* The indictment here presented no problem of proper notice to the accused. See and compare: Cameron v. Hauck, 5 Cir., 383 F.2d 966, 969–972. It is axiomatic that a court sitting in habeas corpus review cannot properly serve as a court of mere errors and appeal. The sufficiency of an indictment is not ordinarily the subject of habeas corpus review unless it is such as to defeat the jurisdiction of the court that tried the offense. Knewel v. Eagan, 268

U.S. 442, 446, 45 S.Ct. 522, 69 L.Ed. 1036. U. S. ex rel. Tangredi v. Wallack, 2 Cir., 343 F.2d 752, 753. The landmark case of Fay v. Noia, 372 U.S. 391, 412, 83 S.Ct. 822, 9 L.Ed.2d 837, may fairly be interpreted as relaxing a too vigorous application of this general rule without which federal habeas courts could be obliged and permitted to serve as second or substitute state courts of appeal. The habeas issue, therefore, is once again "fundamental fairness" consistent with our known and endearing "concepts of ordered liberty" in light of the material facts. Here, as in Knewel v. Eagan, supra, the alleged deficiency is in the pleading of the formal accusation under state law; here, as in Knewel, " * * * Petitioner's assertion that his constitutional rights had been infringed (is) thus scarcely colorable." Fay v. Noia, supra, at 412, footnote 24, 83 S.Ct. at 835.

## V.

■ Petitioner's complaint that there was insufficient evidence to sustain the conviction pertains essentially to Kilgore's lack of ownership of the property that was taken. Kilgore was the store attendant rather than its owner. This issue, Petitioner admits, was raised on appeal. 358 S.W.2d 120. It was carefully considered by the Texas Court of Criminal Appeals and that Court, in rejecting its validity, relied on prior Texas case authority. See: Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469. This does not insulate the issue from habeas consideration here, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; but the issue fails of constitutional dimension, is without merit, and stands judicially resolved upon adequate state grounds.

For the foregoing reasons the Petition for Writ of Habeas Corpus should be, and it is hereby, denied.

The foregoing constitutes Findings of Fact and Conclusions of Law. This is and constitutes a final judgment herein.

The Clerk will notify counsel.